FILED

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

2011 APR 15  PM 3: 43

CLERK, US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE, FLORIDA

| | |
|---|---|
| United States ex rel.<br>**[UNDER SEAL]**,<br>　　Plaintiff/Relator,<br><br>v.<br><br>**[UNDER SEAL]**,<br>　　Defendant. | **COMPLAINT**<br>For damages and other relief<br>Under the False Claims Act<br><br>Case No.:<br><br>3:11-cv-368-J-99MMH-TEM |

**[FILED UNDER SEAL]**

Curtis S. Fallgatter, Esq.
Florida Bar No. 0213225
Harold H. Catlin, Esq.
Florida Bar No. 224065
Fallgatter Farmand & Catlin, P.A.
200 East Forsyth Street
Jacksonville, FL  32202
(904) 353-5800 Telephone
(904) 353-5801 Facsimile


Attorneys for Relator

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| United States ex rel.<br>James F. Valenti, Jr.,<br><br>    Plaintiff /Relator,<br><br>v.<br><br>Tai Shan Golden Gain Aluminum<br>Products, Ltd, Sam Lei, John Lei,<br>Innovative Aluminum (Hong Kong), Ltd,<br>Robert Wingfield, Steven Atkinson,<br>Northeastern Aluminum Corporation,<br>William Ma, Master Attraction Sbn Bhd,<br>LMM Marketing Sbn Bhd, King River,<br>TMI, Southeastern Aluminum Products, Inc.,<br>Basco Manufacturing Company, Waterfall<br>Group, LLC, C.R. Laurence Company, Inc.,<br>Vitro Architectural Products, Southern<br>Aluminum Manufacturing Company,<br>Cardinal Shower Enclosures, Coral<br>Industries, and John Doe Companies<br><br>    Defendants. | **COMPLAINT**<br>For damages and other relief<br>Under the False Claims Act<br><br>Case No.:<br><br>3:11-cv-368-J-99mmH-TEM |

1. This action is brought under the False Claims Act, 31 U.S.C. § 3729 et seq. ("FCA" or the "Act").

## JURISDICTION AND VENUE

2. This Court has jurisdiction and venue pursuant to 31 U.S.C. § 3732(a) and 28 U.S.C. § 1331.

3. The defendants, Sam Lei, John Lei, and Wingfield, in March 2011, met with representatives of the defendant Southeastern Aluminum Products, Inc. in Jacksonville, Florida in

furtherance of this conspiracy. Defendant Southeast Aluminum Products, Inc. is located in and does business in Jacksonville, Florida. Further, aluminum extrusion products which were made in China were shipped by Master Attraction, LMM, and/or Northeastern into the port of Jacksonville, Florida, and false statements as to country of manufacture were made to the United States Customs and Border Protection (hereinafter "Customs") in Jacksonville, Florida in regard to said products so as to avoid having to pay the anti-dumping and countervailing duties on the product. Further, the product was allowed to leave the port of Jacksonville without payment of the required countervailing and anti-dumping duties based upon the false statements. Further, billing from King River and payment to King River has been made in Jacksonville, Florida for the products received by Southeastern subject to this False Claim action.

## PARTIES TO THE ACTION

4. James F. Valenti, Jr., ("Valenti") is the Plaintiff and Relator in this action for himself and for the United States, § 3730(b)(1). He is a resident of Ponte Vedra Beach, Florida.

5. In February 2011, Valenti contacted the appropriate representative of the United States to report and provide information to the Government prior to filing this complaint. Based upon Valenti's initial and voluntary contact with the Government, the Government has instituted and is currently actively investigating this matter. Valenti has continued to assist the Government in its investigation. Valenti will serve his statement of material information regarding this action on the Government together with this complaint in accordance with 31 U.S.C. § 3730(b)(2).

6. Defendant Tai Shan Golden Gain Aluminum Products, Ltd ("Golden Gain") is a foreign corporation with its principal place of business located in Taishan City, Guangdong Province, China. At all relevant times Golden Gain has been and is a large manufacturer of aluminum extrusions for export to the United States. Those extrusions include, among others,

custom-produced extrusions sold to United States manufacturers of shower doors and enclosures. The aluminum extrusions sold to these United States manufacturers are produced using uniquely proprietary dies.

7. Defendant Sam Lei is the President, an officer and/or employee of Golden Gain, and has acted in concert with Defendants Golden Gain, Wingfield, Atkinson, Master Attraction, Innovative, Northeastern and others, to accomplish the illicit activities described herein.

8. Defendant John Lei is the son of Sam Lei, and has acted in concert with Defendants Sam Lei, Golden Gain, Wingfield, Master Attraction, Innovative, Northeastern and others, to accomplish the illicit activities described herein.

9. Defendant Innovative Aluminum (Hong Kong) Ltd ("Innovative") is a Hong Kong company with its principal offices in Hong Kong. On information and belief, Innovative is the corporate parent/owner of Golden Gain and/or a commonly owned and controlled sister company of Golden Gain. Innovative processes all international shipments in relation to container shipments of Golden Gain extrusions exported to the United States.

10. Defendant Robert Wingfield ("Wingfield") is a resident of the State of Texas. At all times relevant hereto Wingfield was and remains a United States sales agent and representative in the United States for Golden Gain and/or Innovative, and has been the individual responsible for the direct and indirect sales of Golden Gain aluminum extrusions to the Defendants identified herein.

11. Defendant Steven Atkinson ("Atkinson") is a resident of the State of Arkansas. Atkinson's residence address is believed to be 10141 Hwy 82 West, Waldo Arkansas. At all times relevant hereto Atkinson was and remains a United States sales agent and representative in the United States for Golden Gain and/or Innovative, and has assisted Wingfield with the direct and indirect sales of Golden Gain aluminum extrusions to the Defendants identified herein. Golden Gain

purports to maintain its United States office or similar business presence at Atkinson's personal residence address in Waldo, Arkansas.

12. Defendant Northeastern Aluminum Corporation ("Northeastern Aluminum") is a New York Corporation with its principal place of business in New York, New York. Northeastern is a newly formed company which became registered in New York on November 15, 2010. Since that time Northeastern Aluminum has been engaged in the importing into the United States Golden Gain aluminum extrusions illegally trans-shipped from China through Malaysia.

13. Defendant William Ma ("Ma") resides in New York, New York. Ma is the founder, principal and manager of Northeastern Aluminum, and since its founding Ma has acted in concert and with common purpose with some or all of the other defendants to accomplish the illicit activities described herein.

14. Defendant Master Attraction Sbn Bhd ("Master Attraction") is an unknown entity which Defendants claim exists and conducts business in Kuala Lumpur, Malaysia. The actual existence of Master Attraction has not yet been confirmed; however Master Attraction is shown as the exporter of record for ocean containers of aluminum extrusions shipped from Malaysia to Defendants, and which in fact were delivered to Defendants in the United States as described herein. Those shipments were illegal trans-shipments of extrusions produced in China by Golden Gain for various Defendants.

15. Defendant LMM Marketing Sbn Bhd ("LMM") is believed to be an existing company and which Defendants claim exists and conducts business in Kuala Lumpur, Malaysia. LMM is shown as the exporter of record for ocean containers of aluminum extrusions shipped from Malaysia to Defendants, and which in fact were delivered to various Defendants in the United States as described herein. Those shipments were illegal trans-shipments of extrusions produced in China by

Golden Gain for various Defendants.

16. Defendant "King River" is purported to be a Malaysian company formed and "owned" by Defendant Wingfield, and possibly other Defendants, for the purpose of accepting international payments by other Defendants for the illegal trans-shipments described herein. The activity was in furtherance of the fraudulent conspiracy to create and implement the illegal trans-shipment of aluminum extrusions from China described herein. The full name of King River is not yet known to Plaintiff but is known to the Department of Homeland Security ("DHS").

17. Defendant "TMI" is a Malaysian company engaged in the business of international freight forwarding. The full name of TMI is not yet known to Plaintiff but is known by ("DHS"). At all times relevant hereto TMI has worked in cooperation and concert with Golden Gain, Innovative, Wingfield, Atkinson, Master Attraction, LMM and Northeastern to create and implement the fraudulent trans-shipment of aluminum extrusions from China to buyers in the United States.

18. Defendant Southeastern Aluminum Products, Inc ("Southeastern") is a Florida corporation with its principal place of business in Jacksonville Florida. Southeastern is a manufacturer of shower doors and enclosures and during all times relevant hereto has been a direct and indirect importer of aluminum extrusions as inputs for production of shower doors and enclosures. Further, as both an importer of record and/or the purchaser of the illegally trans-shipped product, Defendant knew or should have known that the false statements as to the country of manufacture were being made so that the CVD and the AD tariffs were not paid.

19. Defendant Basco Manufacturing Company ("Basco") is a Ohio corporation with its principal place of business in Mason, Ohio. Basco is a manufacturer of shower doors and enclosures and during all times relevant hereto has been a direct and indirect importer of aluminum extrusions as inputs for production of shower doors and enclosures. Further, as both an importer of record

and/or the purchaser of the illegally trans-shipped product, Defendant knew or should have known that the false statements as to the country of manufacture were being made so that the CVD and the AD tariffs were not paid.

20. Defendant Waterfall Group, LLC ("Waterfall") is a Texas corporation with its principal place of business in Carrollton, Texas. Waterfall is a manufacturer of shower doors and enclosures and during all times relevant hereto has been a direct and indirect importer of aluminum extrusions as inputs for production of shower doors and enclosures. Further, as both an importer of record and/or the purchaser of the illegally trans-shipped product, Defendant knew or should have known the false statements as to the country of manufacture were being made so that the CVD and the AD tariffs were not paid.

21. Defendant C.R. Laurence Company, Inc. ("CR Laurence") is a California corporation with its principal place of business in Los Angeles, California. CR Laurence is a manufacturer of shower doors and enclosures and during all times relevant t hereto has been a direct and indirect importer of aluminum extrusions as inputs for production of shower doors and enclosures. Further, as both an importer of record and/or the purchaser of the illegally trans-shipped product, Defendant knew or should have known that the false statements as to the country of manufacture were being made so that the CVD and the AD tariffs were not paid.

22. Defendant Vitro Architectural Products ("Vitro") is believed to be a Tennessee corporation with its principal offices in Memphis TN and its manufacturing facility in Grenada Mississippi. Vitro is a manufacturer of shower doors and enclosures and during all times relevant hereto has been a direct and indirect importer of aluminum extrusions as inputs for production of shower doors and enclosures. Further, as both an importer of record and/or the purchaser of the illegally trans-shipped product, Defendant knew or should have known that the false statements as

to the country of manufacture were being made so that the CVD and the AD tariffs were not paid.

23.     Defendant Southern Aluminum Manufacturing Company ("Southern Mfg.") is an Arkansas corporation with its principal place of business in Magnolia Arkansas. Southern Mfg. is a manufacturer of various products which use customized aluminum extrusions as an input, and during all times relevant hereto has been a direct and indirect importer of aluminum extrusions for those uses. Further, as both an importer of record and/or the purchaser of the illegally trans-shipped product, Defendant knew or should have known that the false statements as to the country of manufacture were being made so that the CVD and the AD tariffs were not paid.

24.     Defendant Cardinal Shower Enclosures ("Cardinal") is believed to be a Kentucky corporation with its principal place of business in Louisville, KY. Cardinal is a manufacturer of shower doors and enclosures and during all times relevant hereto has been a direct and indirect importer of aluminum extrusions as inputs for production of shower doors and enclosures. Further, as both an importer of record and/or the purchaser of the illegally trans-shipped product, Defendant knew or should have known that the false statements as to the country of manufacture were being made so that the CVD and the AD tariffs were not paid.

25.     Defendant Coral Industries ("Coral") is believed to be an Alabama corporation with its principal place of business in Tuscaloosa, AL. Coral is a manufacturer of shower doors and enclosures and during all times relevant hereto has been a direct and indirect importer of aluminum extrusions as inputs for production of shower doors and enclosures. Further, as both an importer of record and/or the purchaser of the illegally trans-shipped product, Defendant knew or should have known that the false statements as to the country of manufacture were being made so that the CVD and the AD tariffs were not paid.

26.     "John Doe Companies" are yet unidentified trans-shippers, importers and/or buyers

of the containers of aluminum extrusion products fraudulently imported under the scheme alleged in this action.

## NATURE OF THE ACTION

27. Prior to September 2010, the Chinese aluminum extrusion manufacturing industry exported large quantities of manufactured aluminum extrusions to buyers in the United States. Golden Gain, through Innovative, was one of those aluminum extrusion manufacturers exporting to United States customers.

28. Prior to September 2010, the defendants Southeast, Basco, Waterfall, CR Laurence, Vitro, Southern Manufacturing, Cardinal and Coral, as well as others, are believed to have been buyers and/or importers of manufactured aluminum extrusion by Golden Gain.

29. In 2010, petitions were filed with the United States Department of Commerce ("DOC") and the United States International Trade Commission ("ITC") which requested the imposition of significant and substantial anti-dumping duties ("AD") and countervailing duties ("CVD") on all aluminum extrusion products imported from producers/manufacturers in China which petition would have included the extruded aluminum products involved in this action.

30. In August 2010, the DOC made a Preliminary Determination on the countervailing duties finding that Chinese producers/exporters of aluminum extruded products, which would include Golden Gain and Innovative, had received direct and indirect countervailing subsidies and that all imported aluminum extrusions from China arriving in the United States on or after September 6, 2010 would be subject to collection of a CVD tariff in the amount of 137.65% ad valorem in addition to the normal rates and applicable duties payable on such products.

31. In October 2010, the DOC made a Preliminary Determination on the anti-dumping duties finding that Chinese producers/exporters of aluminum extruded products, which would

include Golden Gain and Innovative, had received direct and indirect countervailing subsidies and that all imported aluminum extrusions from China arriving in the United States on or after November 6, 2010 would be subject to collection of a AD tariff in the amount of 32.04% ad valorem in addition to the normal rates and applicable duties payable on such products, including the aforementioned CVD tariffs.

32.   At the time that the CVD tariffs was announced and became effective, there were shipments of aluminum extrusion products from Golden Gain in route to the U.S. and aluminum extrusion products already manufactured by Golden Gain in China but not yet shipped.

33.   Initially, the defendants Southeastern, Basco, Waterfall, CR Laurence, Vitro, Southern Mfg., Cardinal and Coral (hereinafter collectively referred to as "Importers/Purchasers") were faced with an immediate and unexpected loss of supply needed for production of their products unless they paid the 137.65% CVD tariffs which would dramatically increase the cost of their product to be sold in the United States.

34.   The defendants Golden Gain, Innovative, Wingfield, Atkinson, Sam Lei, and John Lei developed a scheme in which the already shipped product and the already manufactured product still in China would be reshipped through Malaysia and documents created falsely stating that the product had been manufactured in Malaysia.

35.   The already shipped and already manufactured product was in fact "transhipped" through Malaysia to the United States and falsely claimed to have been manufactured in Malaysia thereby depriving the government of the CVD tariff of 137.65%, and the AD tariff of 32.04%.

36.   The defendant Importers/Purchasers knew or should have known of the scheme and benefitted by obtaining Chinese manufactured aluminum extrusion products at a significantly discounted cost. Further, some of the defendant Importers/Purchasers were initially the importers

of record of the transhipped product.

37. In furtherance of this scheme, defendants Wingfield, Atkinson, Same Lei, John Lei, Golden Gain, and/or Innovative also created a "fictional" manufacturer of the Chinese manufactured product for any Chinese manufactured aluminum extrusion transhipped through Malaysia. Initially, the entity was the defendant Master Attraction. It is unknown whether or not Master Attraction is a real entity but identifying Master Attraction as the producer of the subject goods to Customs was a fraudulent and false statement.

38. In furtherance of the scheme, an additional possible fictitious Malaysian company, defendant LMM, was created and again false representations were made to Customs on various shipments of aluminum extrusion products that LMM was the manufacturer in Malaysia when Golden Gain was the actual manufacturer of the product in China.

39. Since the beginning of the scheme, the defendant Importers/Purchasers have had actual knowledge and/or should have known that they were importing and/or receiving Chinese manufactured aluminum extrusion product which was being imported into the United States with a false representation that it had been made in Malaysia which resulted in no payment of the CVD or AD tariffs and a resultant significant economic benefit to the defendant Importers/Purchasers.

40. Later in the scheme, defendant Ma, previously a Chinese citizen currently residing in New York City, was requested by Golden Gain, Innovative, TMI and other defendants to form defendant Northeastern Aluminum Corporation for the expressed purpose of fronting as the United States importer of record for the Chinese manufactured product which was being trans-shipped through Malaysia so as to avoid the CVD and AD tariffs. Ma did so. The creation and insertion of this sham entity was for the sole purpose of providing ostensible insulation for defendant Importers/Purchasers from their lawful obligation, as the true importers, to pay those CVD and AD

tariffs. Each of those defendant Importers/Purchasers, or their designated agents, had previously been the importers of record for the aluminum extruded products they purchased from Golden Gain, and the recent insertion of Northeastern to serve as the new importer of record was intended and utilized solely to further the fraudulent scheme concocted by Golden Gain, Innovative, Wingfield, Atkinson, King River, TMI and the defendant Importer/Purchasers.

41. Since the effective date of the CVD and AD tariffs, additional proprietary aluminum extruded product has been manufactured by Golden Gain in China and then transhipped through Malaysia to the United States with false representations to Customs that said products were manufactured in Malaysia resulting in the nonpayment of the CVD and AD tariffs.

42. The ultimate result of this past and ongoing conspiracy is the following:

    a. The Chinese manufacturer, Golden Gain, and its affiliates, Innovative, Wingfield, Atkinson, Master Attraction, LMM, and/or Northeaster, were able to sell product which would not have been accepted or purchased by the defendant Importers/Purchasers as being cost prohibitive if the CVD and AD tariffs were paid.

    b. The economic benefit to the defendant Importers/Purchasers is that the proprietary product that each purchased from the Chinese manufacturer would be received and used in their ongoing business operations without having the additional expense of paying the CVD and AD tariffs.

    c. The Government was defrauded out of the payment of the CVD tariffs due for the Chinese manufactured aluminum extrusion products received in the United States after September 6, 2010 which were falsely represented to have been made in Malaysia. Further, the government was defrauded out of the

        AD tariffs due for any Chinese manufactured aluminum extrusion products received in the United States after November 6, 2010 which were falsely represented to have been made in Malaysia.

d.    All of the defendants conspired in the scheme to falsely represent to Customs that the Chinese manufactured aluminum products which were trans-shipped through Malaysia were manufactured in Malaysia.

e.    The plaintiff is entitled to damages for all unpaid CVD and AD tariffs not paid on any Chinese manufactured aluminum extrusion products based upon a false representation that said product had been manufactured in Malaysia, or any other country except China.

WHEREFORE, plaintiff James Valenti, acting on behalf of and in the name of the United States, demands a judgement be entered in the favor of the United States against the defendants as follows:

(1)    for treble the amount of the United States' damages, plus civil penalties of $11,000 for each false claim;

(2)    for all costs of this civil action; and

(3)    for prejudgment interest and for such other and further relief as this court deems just and equitable.

MOREOVER, plaintiff James Valenti, on his own behalf, demands and prays that an award be made in his favor as follows: for 25% of the proceeds collected by the United States if it intervenes and conducts this action, or for 30% of the proceeds if the United States does not intervene; for an amount for reasonable expenses necessarily incurred by the relator in the prosecution of this action; for all reasonable attorney's fees and costs incurred by the relator, and for

such other and further relief which Relator may show himself justly entitled.

DATED: April 15, 2011

                                          FALLGATTER FARMAND & CATLIN, P.A.

*/s/ Harold H. Catlin*
Curtis S. Fallgatter, Esq.
Florida Bar No. 0213225
Harold H. Catlin, Esq.
Florida Bar No. 224065
200 East Forsyth Street
Jacksonville, FL 32202
(904) 353-5800 Telephone
(904) 353-5801 Facsimile
Attorneys for Relator

31011